J-S52006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| D.D., | : | |
| | : | |
| Appellant | : | No. 2032 MDA 2016 |

Appeal from the Judgments of Sentence December 9, 2016
in the Court of Common Pleas of York County,
Criminal Division, No(s): CP-67-CR-0000085-2015;
CP-67-CR-0000086-2015

BEFORE: GANTMAN, P.J., LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED OCTOBER 18, 2017**

D.D. (hereinafter "Appellant") appeals from the judgments of sentence imposed after he was convicted of three counts of indecent assault (without consent); two counts each of incest, statutory sexual assault, and corruption of minors; and one count each of rape of a child and indecent assault of a person less than 13 years of age.[1] We affirm.

The trial court summarized the relevant factual history, from evidence adduced at the jury trial in the case docketed at 86-2015 (hereinafter "the B.D. case"), as follows:

> B.D.[, Appellant's biological daughter,] testified that when she was 11 years[] old and in her bed at night, [Appellant] … came into her bedroom, stared at her, lay on top of her and had vaginal intercourse with her[,] and then told her not to say anything. Then, when B.D. was 12 or 13 years[] old, [Appellant]

---

[1] **See** 18 Pa.C.S.A. §§ 3126(a)(1), 4302, 3122.1, 6301(a)(1), 3121(c), 3126(a)(7).

went to her room at night and again had vaginal intercourse with her and told her not to say anything.

Among the witnesses [at the trial in the B.D. case] were M.E. and A.S. During the trial, M.E., who is [Appellant's] step-daughter, testified that when she was 13 years[] old, she was lying in her parents' bed when [Appellant] touched her and had vaginal intercourse with her, which she testified happened more than once. According to M.E., after the intercourse, [Appellant] told her not to tell her mother.

During the [] trial involving B.D., there was a stipulation that on November 29, 2012[, Appellant had] pled guilty to statutory sexual assault, aggravated indecent assault, indecent assault and corruption of minors in a case related to M.E.

A.S., who is [Appellant's minor] niece, testified that while she was living with him, and sleeping in her bed, she woke up to the [Appellant] having vaginal intercourse with her, and [Appellant] told her to not tell her mother. At the time, A.S. was six or seven years old.

Trial Court Opinion (docket no. 86-2015), 3/13/17, at 3-4 (footnote citations to record omitted).

In February 2015, the Commonwealth filed various charges against Appellant for the sexual assaults that he perpetrated against B.D. and A.S., which were listed at two separate docket numbers. The B.D. case was initially consolidated with the case concerning Appellant's crimes against A.S., docketed at 85-2015 (hereinafter "the A.S. case").

In May 2015, Appellant filed a Motion seeking severance of the A.S. case and the B.D. case for the purposes of trial (hereinafter "the Motion to

sever").[2]  Following a hearing in June 2015 (hereinafter "the severance hearing"), the Honorable Thomas H. Kelley ("Judge Kelley") entered an Order granting the Motion to sever.[3]  Judge Kelley subsequently retired, and the cases were transferred to the Honorable Harry Ness ("Judge Ness").

On January 28, 2016, the Commonwealth filed a Motion for Introduction

---

[2] Pennsylvania Rule of Criminal Procedure 582 provides that offenses charged in separate informations can be tried jointly where "(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or (b) the offenses charged are based on the same act or transaction." Pa.R.Crim.P. 582(A)(1) (paragraph break omitted).  Relatedly, Pa.R.Crim.P. 583 provides that "[t]he court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." **Id.**

[3] Judge Kelley's Order granted severance without explanation.  However, on appeal, Appellant emphasizes Judge Kelley's following remark, made on the record following the severance hearing:

> [M]y inclination, I reviewed it again, is that I am going to grant the [M]otion to se[]ver.  Under the circumstance[s], I want [the A.S. case and the B.D. case] tried separately.  So, I'll look at it a little bit further, but based upon the offer of the Commonwealth, *I think that the two situations are not sufficiently similar to go forward jointly*. That's my inclination.  I'll issue an Order after I complete[] my full analysis of the cases.

N.T., 6/15/15, at 2 (emphasis added; paragraph breaks omitted).

of Prior Bad Acts Pursuant to Pennsylvania Rule of Evidence 404(b)[4] (hereinafter the "Rule 404(b) Motion"). Therein, the Commonwealth sought to introduce, at the separate trials on the B.D. case and the A.S. case, testimony from A.S., B.D. and M.E., concerning the crimes that Appellant perpetrated against all three girls (hereinafter referred to as "the proposed 404(b) evidence"). The Commonwealth asserted that such evidence was relevant and admissible under Rule 404(b) to show a common scheme or design by Appellant, and that its probative value outweighed its potential for unfair prejudice.

Appellant filed an "Answer" in response to the Rule 404(b) Motion, challenging the admissibility of the proposed 404(b) evidence. He emphasized therein that Judge Kelley had previously severed the B.D. case

---

[4] Rule 404(b) provides, in relevant part, as follows:

**(1) Prohibited Uses.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that[,] on a particular occasion[,] the person acted in accordance with the character.

**(2) Permitted Uses.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case[,] this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b); **see also Commonwealth v. Dillon**, 925 A.2d 131, 141 (Pa. 2007) (stating that "[e]vidence will not be prohibited merely because it is harmful to the defendant. This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." (citation and quotation marks omitted)).

and the A.S. case, finding that the cases were not sufficiently similar to be tried jointly. According to Appellant, the Commonwealth's Rule 404(b) Motion improperly sought to circumvent Judge Kelley's prior ruling, in violation of the "coordinate jurisdiction rule."[5] Appellant further urged that the B.D. case and the A.S. case were too factually different to establish a common scheme or design under Rule 404(b).

Subsequently, on July 12, 2016, the Commonwealth filed a Motion *in Limine* (hereinafter the "Motion *in Limine*") wherein it sought, *inter alia*, to introduce certain testimony from M.E., at the trial in the B.D. case, in order to explain to the jury why B.D. had delayed in reporting the sexual assaults to the authorities (hereinafter "the delayed reporting matter").[6]

On July 15, 2016, the trial court conducted a hearing on the Rule 404(b) Motion and Motion *in Limine* (hereinafter "the Rule 404(b) hearing"), wherein B.D., A.S., and M.E. testified. At the conclusion of the Rule 404(b) hearing, the trial court stated, *inter alia*, that it did not believe that Judge

---

[5] "Generally, the coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge." ***Zane v. Friends Hosp.***, 836 A.2d 25, 29 (Pa. 2003); *see also **Commonwealth v. Starr***, 664 A.2d 1326, 1332 (Pa. 1995) (stating that "only in exceptional circumstances[,] such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed," may the coordinate jurisdiction rule be disregarded).

[6] B.D. reported the sexual assaults to the authorities in 2014, several years after they had occurred. M.E. reported Appellant's sexual assaults against her in 2012.

Kelley's prior severance of the B.D. case and the A.S. case was dispositive of whether the Commonwealth could introduce, at the separate trials, the proposed 404(b) evidence. *See* N.T., 7/15/16, at 43, 46 (stating that the court "agree[s] that the fact that you sever them doesn't mean they can never be blended for the purposes of [Rule] 404."). Accordingly, on the same date, the trial court entered separate Orders granting the Rule 404(b) Motion and the Motion *in Limine* (insofar as it related to the B.D. case).[7]

The matter proceeded to a jury trial on the B.D. case on July 18, 2016, wherein B.D., A.S., and M.E. all testified concerning the crimes that Appellant had perpetrated against them. Relevant to the instant appeal, prior to sending the jury out for deliberations, Judge Ness issued the following instructions concerning the delayed reporting matter and the admission of the proposed 404(b) evidence:

> There have been some indications here that [B.D.] did not make a prompt complaint. Before you find [Appellant] guilty of the crime[s] charged in this case, you must be convinced beyond a reasonable doubt that the act, in fact, did occur. The evidence of [B.D.'s] delay in making a complaint does not necessarily make her testimony unreliable[,] but may remove from it the assurance of reliability accompanying the prompt complaint or outcry that a victim of a crime such as this would ordinarily be expected to make. Therefore, the delay in making this complaint should be considered in evaluating her testimony and deciding whether the act occurred at all. You may[,] as well[,] consider [B.D.'s] age and the fact that [Appellant] is her father, the alleged perpetrator of this offense, as well as her explanation for the delay in whether or not you decide delay has any impact whatsoever on whether or not this act may or may not have occurred.

---

[7] These Orders, though entered on the trial court's docket, are not contained in the electronic certified record submitted to this Court.

You have heard evidence tending to prove that [Appellant] was guilty of an offense for which he is not on trial. In this case, you have heard testimony to the effect that [Appellant] pled guilty to sexually assaulting his stepdaughter, [M.E.], and allegedly sexually assaulted his niece, [A.S.] This evidence is before you for a limited purpose, and that is for the purpose of showing that the likelihood of [Appellant] committing this offense is supported, that is, [B.D.'s] credibility is enhanced by the other offenses[, *i.e.*, against A.S. and M.E.,] in that they would constitute[,] in your eyes, if you believed the facts, a common plan, scheme or design, a motive, [or] a signature[,] in [] that if you observed the other two offenses, they were similar to the extent that[,] if you believe [B.D.,] and you believe [A.S. and M.E.], this could support and corroborate the statements of [B.D.] regarding these allegations. It must not be considered by you in any way other than for the purpose that I just stated. You may not regard this evidence as showing that [Appellant] is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

N.T., 7/18-19/16, at 255-57 (some paragraph breaks omitted). On July 19, 2016, the jury returned verdicts of guilty on all of the charges against Appellant in the B.D. case. On the same date, Appellant entered a *nolo contendere* plea to one count of indecent assault concerning the A.S. case.

The trial court deferred sentencing so that a member of the Sexual Offender Assessment Board ("SOAB") could assess Appellant, and issue a recommendation as to whether he met the criteria of a sexually violent predator ("SVP"). After the completion of the SOAB report, the trial court scheduled sentencing on the B.D. case and the A.S. case to occur simultaneously. At the SVP/sentencing hearing on December 9, 2016, the trial court determined that Appellant met the requirements for SVP classification. On the B.D. case, the trial court sentenced Appellant to an

aggregate term of 25-50 years in prison. On the A.S. case, the trial court imposed a concurrent term of two years of probation.

On December 13, 2016, Appellant timely filed a Notice of Appeal.[8] In response, the trial court ordered Appellant to file concise statements of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). Appellant timely filed separate Concise Statements for the B.D. case and the A.S. case.[9] The trial court thereafter issued Pa.R.A.P. 1925(a) Opinions for the respective cases.

Appellant now presents the following issue for our review:

Whether the trial court erred in admitting prejudicial evidence of other complainants' allegations of sexual abuse: (A) in violation of the coordinate jurisdiction rule in light of [Judge Kelley's] prior severance ruling; and in violation of Pennsylvania Rule of Evidence 404(b) because: (B) the allegations were not so similar as to show a common scheme or design; and (C) one complainant's report of abuse was not probative of another complainant's delay in reporting abuse[?]

Brief for Appellant at 4.

Our standard of review concerning a challenge to the admissibility of evidence is as follows:

---

[8] Appellant listed on his Notice of Appeal the docket numbers for both the B.D. case and the A.S. case (the respective judgments of sentence were entered on the same date).

[9] Only the claims that Appellant preserved in his Concise Statement pertaining to the B.D. case are relevant to the instant appeal. *See* Brief for Appellant at 4 n.1 (wherein Appellant's counsel states that Appellant is proceeding only on the issues preserved in the Concise Statement filed in the B.D. case, and not the A.S. case).

The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Johnson*, 42 A.3d 1017, 1027 (Pa. 2012) (citations and quotation marks omitted).

As a claim alleging a violation of the coordinate jurisdiction rule presents a question of law, our standard of review is *de novo* and our scope of review is plenary. *Zane*, 836 A.2d at 30 n.8.

We will address Appellant's first two sub-issues together, as they are related and both challenge the trial court's admission of the proposed 404(b) evidence in the B.D. case. *See* Brief for Appellant at 23-42. Appellant first argues that Judge Ness's

[a]llowing the allegations of A.S. in the B.D. case violated the coordinate jurisdiction rule due to Judge Kelley's [prior] severance of the two cases. The severance -- including Judge Kelley's statement that the cases were "not sufficiently similar to go forward jointly[," *see* FN 2, *supra*] -- operated as a finding that the allegations were not so similar as to comprise a common scheme or design. Judge Ness was bound by that finding upon taking over the [B.D.] case, and admitting A.S.'[s] allegations was therefore erroneous and prejudicial.

Brief for Appellant at 23. Further, Appellant asserts that none of the exceptions to the coordinate jurisdiction rule apply to the instant case. *See id.* at 24-28; *see also id.* at 27 (asserting that "the [M]otions at issue[, *i.e.*, the Motion to sever and Rule 404(b) Motion,] did not 'differ in kind' in such a

way as to permit relaxation of the coordinate jurisdiction rule[,]" and asserting that these Motions "implicate the same legal issue, concern the exact same facts, and do not call for different standards[.]").

Appellant next urges that the trial court erred in ruling that the proposed 404(b) evidence was admissible at the trial in the B.D. case to show a common scheme or design by Appellant, where "A.S.'[s] and M.E.'s allegations were not sufficiently similar to B.D.'s as to warrant admission on this basis." **Id.** at 34-35. Appellant contends that the similarities between his sexual assaults of all three victims were insignificant because such details are common to many sexual assault crimes. **Id.** at 36-38; **see also id.** at 37 (asserting that although "[e]ach [victim] had a familial relation to [Appellant], [had] alleged penis-to-vagina penetration occurring in bed, and claimed [that Appellant] told them not to say anything afterward[,]" such facts are "extremely common" in many sexual assault prosecutions). According to Appellant, there were also "key" dissimilarities between the crimes, including (1) the varying ages of the victims at the time of the assaults; (2) the number of occasions that Appellant had assaulted each victim; (3) the respective rooms in Appellant's home in which the assaults occurred; and (4) "though B.D. and A.S. alleged only vaginal penetration, M.E. said [Appellant] also rubbed her breasts." **Id.** at 39-40.

Appellant further contends that "[t]he erroneous admission of the [proposed 404(b)] evidence was prejudicial in light of the weakness of the

Commonwealth's case. Viewed without the assistance of the offending evidence, B.D.'s testimony was thoroughly unconvincing." *Id.* at 28; *see also id.* at 28-31 (explaining why B.D.'s testimony was independently "unconvincing"). Appellant avers that, "taken together, the testimony of A.S. and M.E. covers 33 pages [of the trial] transcript. … These allegations, for which [Appellant] was not on trial, therefore represented enormous and prejudicial portions of a short trial that, from opening statement through closing argument, only lasted 171 pages." *Id.* at 40-41. Finally, Appellant urges that Judge Ness's above-mentioned cautionary instruction as to the admission of the proposed 404(b) evidence was insufficient to overcome the unduly prejudicial nature of this evidence. *Id.* at 32-34, 41.

In its Opinion, the trial court thoroughly discussed these claims, set forth the relevant law, and determined that

    (A)   the court did not err in admitting the proposed 404(b) evidence, where (i) its probative value outweighed its potential prejudicial impact, and (ii) the sufficiently similar nature of Appellant's assaults of the three victims demonstrated a common scheme or design; and

    (B)   there was no violation of the coordinate jurisdiction rule, where (i) Judge Kelley had never explicitly ruled that evidence from the A.S. case and the B.D. case was inadmissible in the trial of either case for purposes of Rule 404(b), and (ii) the jury in the B.D. case was not asked to decide whether Appellant was guilty of the crimes against A.S.

*See* Trial Court Opinion (docket no. 86-2015), 3/13/17, at 5-12. The trial court's sound analysis is supported by the record and the law, and we agree

with its determination. Accordingly, we affirm on this basis as to Appellant's first two sub-issues, *see id.*, with the following addendum.

As mentioned above, Judge Ness issued a comprehensive jury instruction concerning the admission of the proposed 404(b) evidence, and clarified the limited purpose for which the jury could consider it. *See* N.T., 7/18-19/16, at 256-57. It is well established that a jury is presumed to follow a trial court's instructions. *Commonwealth v. Williams*, 936 A.2d 12, 21, 33 (Pa. 2007). Moreover, "when weighing the potential for prejudice [concerning Rule 404(b) evidence], a trial court may consider how a cautionary jury instruction might ameliorate the prejudicial effect of the proffered evidence." *Dillon*, 925 A.2d at 141 (citing Pa.R.E. 404(b) cmt.)). Thus, where a cautionary instruction is provided to the jury, the likelihood of undue prejudice is substantially minimized. *See Commonwealth v. Hairston*, 84 A.3d 657, 666-67 (Pa. 2014) (holding that an extraneous offense of arson was admissible under Rule 404(b) as *res gestae* evidence in defendant's prosecution for murder, and the trial court's limiting instruction on how the arson evidence should be considered minimized the likelihood that such evidence would inflame the jury or cause it to convict defendant on an improper basis); *see also Commonwealth v. Jones*, 668 A.2d 491, 504 (Pa. 1995) (stating that an appellant's failure to object to a cautionary instruction indicates his satisfaction with the instruction).

Moreover, we reject Appellant's challenge that B.D.'s testimony was independently unconvincing to support the convictions. By statute, the uncorroborated testimony of a sexual assault victim, if believed, alone is sufficient to support a sexual assault conviction. 18 Pa.C.S.A. § 3106; **see also Commonwealth v. Charlton**, 902 A.2d 554, 562 (Pa. Super. 2006) (noting that, in a prosecution for, *inter alia*, incest and corruption of minors, this Court has long held that a victim's uncorroborated testimony is sufficient to convict).

In his final sub-issue, Appellant contends that the trial court rendered a legally improper ruling concerning the delayed reporting matter (*i.e.*, to the extent that the trial court admitted M.E.'s testimony on the separate basis that it tended to explain B.D.'s delay in reporting the sexual assaults). **See** Brief for Appellant at 42-45. According to Appellant, "this evidence was not at all probative of the reasons for B.D.'s delay." **Id.** at 42. Specifically, Appellant asserts that

> [a]t the Rule 404(b) hearing … [B.D.] did say she delayed in reporting the abuse for several years because she "was in shock when [she] found out that it had happened to [M.E.], and [B.D.] didn't want to believe it." (N.T., 7/15/16, at 9). But this makes little sense, and the remainder of B.D.'s testimony undermined the notion that her delay had anything to do with M.E.'s allegations.

Brief for Appellant at 43.

The trial court addressed this claim in its Opinion, applied a controlling case, **see Dillon**, **supra**, and determined that the court did not err in

- 13 -

admitting the evidence in question. **See** Trial Court Opinion (docket no. 86-2015), 3/13/17, at 12-14. We agree with the trial court's analysis and determination, and therefore affirm on this basis as to Appellant's final sub-issue. **See id.**[10]

Based on the foregoing, we discern no abuse of discretion or error of law by the trial court in its rulings on the admissibility of evidence, and conclude that Appellant was afforded a fair trial.

Judgments of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/18/2017</u>

---

[10] Moreover, Judge Ness also issued a cautionary jury instruction concerning the delayed reporting matter. **See** N.T., 7/18-19/16, at 256, **supra**. This instruction tended to minimize any undue prejudice that M.E.'s testimony might have had upon Appellant. **See Hairston**, **supra**; **see also Williams**, **supra** (stating that a jury is presumed to follow the trial court's instructions).

# IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA

| COMMONWEALTH OF | : | NO. CP-67-CR-86-2015 |
| PENNSYLVANIA | : | |
| v. | : | |
| | : | |
| D■■ D■■, | : | |
| Appellant | : | |

## OPINION IN SUPPORT OF ORDER PURSUANT TO Pa.R.A.P. 1925(a)

Appellant, D■■ D■■ by and through his attorney Brian McNeil, Esquire, appeals to the Superior Court of Pennsylvania. On January 30, 2017,[1] the Appellant filed the Statement of Matters Complained of on Appeal. The statement was then amended and filed on February 15, 2017. This Court now issues this 1925(a) Opinion.

## PROCEDURAL HISTORY

On July 19, 2015, CP-67-CR-85-2015 and CP-67-CR-86-2015 were severed. In the instant case, this Court granted Commonwealth's Motion for

---

[1] Appellant had been granted several requests for extension of time to file the Statement of Matters Complained of on Appeal.

1

Introduction of Prior Bad Acts Pursuant to Rule 404(b) following a hearing that same day where A.S., B.D. and M.E. testified on July 15, 2016.

Appellant was found guilty in a jury trial on July 19, 2016. Appellant was sentenced to a total of 25 to 50 years in prison following the linking of sentences.

## MATTERS COMPLAINED OF ON APPEAL

The Appellant raises the following grounds for error on appeal:[2]

1. Whether the trial court "violated the coordinate jurisdiction rule [when it] . . . allow[ed] evidence from the A.S. case during trial of the instant case?"

2. Whether the trial court erred in allowing evidence from the A.S. case and M.E. case?

3. Whether the Court erred when the Court allowed the Commonwealth's motion to admit evidence of M.E.'s report of abuse for the purposes of explaining B.D.'s delay in reporting abuse?

4. Whether the trial court erred when it allowed the Commonwealth to amend the timeframe in the information?

5. Whether the Court erred when it found the Commonwealth had

---

[2] These arguments have been paraphrased or quoted where necessary for clarity.

carried its burden of proving by clear and convincing evidence that [Appellant] meets the criteria to be designated as an SVP ("Sexually Violent Predator")?

6. Whether the indecent assault conviction should have merged with the rape of a child conviction for sentencing purposes?

## Factual Background

A jury trial was held on July 19, 2016. The victim in this case was B.D., who testified that when she was 11 years-old and in her bed at night, Appellant, who is her father, came into her bedroom, stared at her, lay on top of her and had vaginal intercourse with her and then told her not to say anything.[3] Then, when B.D. was 12 or 13 years-old, Appellant went to her room at night and again had vaginal intercourse with her and told her not to say anything.[4]

Among the witnesses were M.E. and A.S. During the trial, M.E., who is Appellant's step-daughter, testified that when she was 13 years-old, she was lying in her parents' bed when Appellant touched her and had vaginal intercourse with her, which she testified happened more than once.[5] According

---

[3] N.T., Jury Trial, July 18, 2016-July 19, 2016, pg. 75-80.
[4] *Id.* at 81-82.
[5] *Id.* at 137-139.

3

to M.E., after the intercourse, the Appellant told her not to tell her mother.[6]

During the instant trial involving B.D., there was a stipulation that on November 29, 2012 the defendant pled guilty to statutory sexual assault, aggravated indecent assault, indecent assault and corruption of minors in a case related to M.E.[7]

A.S., who is Appellant's niece, testified that while she was living with him, and sleeping in her bed, she woke up to the Appellant having vaginal intercourse with her, and Appellant told her to not tell her mother.[8] At the time, A.S. was six or seven years old.[9]

Several officers also testified that Appellant had told them that after he was arrested for the instant case, he told the officers that of the three, the only one he had sexual relations with was M.E.[10]

---

[6] *Id.* at 147.
[7] *Id.* at 148.
[8] *Id.* at 177-179.
[9] *Id.* at 180.
[10] *Id.* at 174, 199.

4

# DISCUSSION

This court will now address each ground raised for the appeal in the following sections. The first and second ground for the appeal will be addressed together.

> *1. Whether the trial court violated the coordinate jurisdiction rule when it allowed evidence from the A.S. case during trial of the instant case, and whether the trial court erred in allowing evidence from the A.S. case and M.E. case?*

The Commonwealth had made a Motion for Introduction of Prior Bad Acts Pursuant to Rule 404(b), where the Commonwealth sought to introduce M.E.'s and A.S.'s testimonies in order to establish a common scheme or design. A hearing was held to determine whether Appellant's Prior Bad Acts were admissible pursuant to Rule 404(b). During the hearing, B.D., M.E., and A.S. testified about incidents involving Appellant.

There were a number of similarities between the testimonies of B.D., A.S., and M.E.. Specifically, all three testified that they had vaginal intercourse with the Appellant.[11] When this intercourse occurred, they were at home, lying in a bed on their backs while their mother was away from the home.[12] Further,

---

[11] Transcript (Hearing), Commonwealth v. D███ at pg. 6, 7, 20, 25, 30 (July 15, 2016).
[12] *Id.* at 5,7,19,20,22,28, 29.

Appellant was a father figure to all three, where B.D. was his daughter; M.E. was his step-daughter, and A.S. was his biological niece.[13] However, Appellant had raised A.S. as a daughter since she was one and half years-old.[14] During the incidents involving B.D. and the first incident involving M.E., Appellant told them not to say anything about the incident.[15] Further, all three were relatively young girls when the incidents happened. B.D. was approximately eleven years-old.[16] M.E. was approximately thirteen years-old, and A.S. was approximately six to seven years-old.[17]

The Court granted the Commonwealth's motion pursuant to *Commonwealth v. G.D.M., Sr.*, 926 A.2d 984 (Pa. Super. 2007) and *Commonwealth v. O'Brien*, 836 A.2d 966 (Pa. Super. 2003). In the order, this court stated the following:

> the Court finds the testimonies of M.E. and A.[S]. are not too remote in time to eliminate their probative value. Finally, after balancing the potential prejudicial impact of the common scheme evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and

---

[13] *Id.* at 4, 18, 27.
[14] *Id.* at 4, 18, 27.
[15] *Id.* at 6, 7, 20.
[16] *Id.* at 4.
[17] *Id.* at 19, 20, 32.

the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations, the Court finds the probative value of such evidence is not outweighed by its potential prejudicial impact upon the trier of fact.[18]

The similarities listed above demonstrate a common scheme or plan between M.E., A.S., and B.D.

Appellant's first two arguments will be addressed together since the core issue is whether the testimony about acts concerning A.S. and M.E. should have been admissible. In his Amended Statement of Matters Complained of on Appeal, Appellant argues that evidence from the A.S. case violates the coordinate jurisdiction rule and that evidence and testimony from the A.S. and M.E. cases should not have been admissible. Specifically, the Appellant argues that the prejudicial effect significantly outweighed the probative value.

The coordinate jurisdiction rule states that "upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial

---

[18] Order Allowing Commonwealth's Motion for Introduction of Prior Bad Acts Pursuant to Rule 404(b) of the Pennsylvania Rules of Evidence, Commonwealth v. D██ D██ (July 15, 2016).

7

judge."[19] However, this prohibition is not absolute.[20] Here, a previous judge had severed the A.S. case and B.D.. However, the previous judge had not ruled that testimony about these prior bad acts was inadmissible.[21]

The general rule about prior bad acts is as follows: "Evidence of distinct crimes are not admissible against a defendant being prosecuted for another crime *solely* to show his bad character and his propensity for committing criminal acts."[22] However, there are exceptions to this general rule. The exceptions are described as follows:

> "[T]he general rule prohibiting the admission of evidence of prior crimes nevertheless allows evidence of other crimes to be introduced to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial, in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other."[23]

---

[19] *Zane v. Friends Hosp.*, 575 Pa. 236, 243, 836 A.2d 25, 29 (2003).
[20] *Id.*
[21] Transcript (Motion/ Petition Hearing), Commonwealth v. D███ D███ (June 2, 2015).
[22] *Commonwealth v. Lark*, 543 A.2d 491, 496–97 (Pa. 1988) (internal citation omitted) (emphasis in original).
[23] *Id.* at 497 (internal citation omitted).

8

The "standard of review for the admission of evidence looks to whether the trial court abused its discretion."[24]

In *Commonwealth v. G.D.M., Sr.*, the Appellant alleged that the court erred when it allowed a probation officer to testify about a prior offense of indecent assault and endangering the welfare of children.[25] The Pennsylvania Superior Court held that there was no abuse of discretion. The court reasoned the following:

> "We find that the testimony regarding appellant's crimes against his other child was proper as it evinced a common plan. The time frames of the abuse of the other child and of the victim were very close. Appellant abused his daughter from July 21, 1996 until March 21, 1997. He then began abusing the victim in September 1997, shortly after the abuse of the daughter ended. Both molestations occurred in the family home and both involved appellant's own children. Moreover, the nature of both molestations involved manipulation of the genitals by hand only; there were no allegations of any other type of sexual activity. The earlier offense was quite similar to the latter, and we find no abuse of discretion in the trial court's finding the probative value of the evidence outweighed the prejudice incurred in admitting the evidence."[26]

---

[24] *Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 986 (Pa. Super. Ct. 2007).
[25] *Id.* at 986-987.
[26] *Id.* at 987-988.

Similarly, in *Commonwealth v. O'Brien*, the court held that the trial court abused its discretion when it denied the commonwealth's motion to admit evidence of similar indecent assault crimes. The court reasoned the following:

> Here, the Commonwealth was required to prove that a non-consensual touching occurred, the purpose of which was sexual gratification. [The defendant] denies that the touching occurred, and since the uncorroborated testimony of the alleged victim in this case might reasonably lead a jury to determine that there was a reasonable doubt as to whether [The defendant] committed the crime charged, it is fair to conclude that the other crimes evidence is necessary for the prosecution of the case. [27]

The court in that case acknowledged that although the other crimes were prejudicial, it was not unduly prejudicial. Further the court concluded that the prior crime evidence and the instant charge fell under the "common scheme, plan or design exception to the general rule that evidence of one crime is inadmissible against a defendant being tried for another crime, (2) that the crimes are not too remote in time,[28] and (3) that the probative value of the evidence outweighs the prejudicial effect."[29]

---

[27] *Commonwealth v. O'Brien*, 836 A.2d 966, 972 (Pa. Super. Ct. 2003) (The Pennsylvania Superior Court was discussing the *Gordon* case (*Commonwealth v. Gordon*, 673 A.2d 866, 870 (Pa. 1996)).
[28] In *O'Brien*, the relevant time period that the prior bad acts and instant crime were 5 years.
[29] *O'Brien*, 836 A.2d at 972.

10

As stated previously, the similarities between the crimes demonstrated a common scheme like the crimes in G.D.M. Like the crimes in G.D.M., the crimes here occurred during a similar time frame and were very similar forms of sexual activity, including the nature of the sexual intercourse, the similar ages between the three victims, the location where the incidents occurred, the relationship of the Appellant to the three victims, and the fact that the mother was not home at the time. Although the nature of the crimes other than the one at issue were prejudicial, they were not unduly prejudicial and fell under the common plan or scheme exception.

Further, the coordinate jurisdiction rule was not violated since Appellant was not being tried for the crimes described by A.S. and because the jury was not asked to decide whether Appellant was guilty for the crimes involving A.S. Further, the judge who had severed the cases did not rule that evidence from the two different cases could not be presented as evidence of a common plan, scheme or design the other trial. Rather, the judge severed so that the two cases would not be *tried together* or *decided* by a jury *together*.

For the reasons listed above, this Court respectfully requests that the Superior Court find that the trial court did not abuse its discretion or violate the

11

coordinate jurisdiction rule.

  **2. *Whether the Court erred when the Court allowed the Commonwealth's motion to admit evidence of M.E.'s report of abuse for the purposes of explaining B.D.'s delay in reporting abuse?***

This Court did not err when it allowed Commonwealth's motion to admit evidence of M.E.'s report of abuse for the purposes of explaining B.D.'s delay in reporting the abuse, despite Appellant's argument to the contrary. In fact, the Pennsylvania Supreme Court has directly addressed this issue. According to the Pennsylvania Supreme Court, "this Court has separately recognized the reality that a sexual assault prosecution oftentimes depends predominately on the victim's credibility, which is obviously affected by any delay in reporting the abuse."[30] The events around the sexual abuse and any reasons for the delay in reporting the sexual abuse "enables the factfinder to more accurately assess the victim's credibility."[31]

Further, the Pennsylvania Supreme Court stated in *Dillon* that during sexual assault cases, "juries . . . expect to hear certain kinds of evidence and,

---

[30] *Commonwealth v. Dillon*, 925 A.2d 131, 138–39 (Pa. 2007).
[31] *Id.*

12

without any reference to such evidence during the trial, a jury is likely to unfairly penalize the Commonwealth . . . ."[32]

Applying this rationale to the case in *Dillon*, the Pennsylvania Supreme Court stated that "there is no doubt that evidence of appellant's physical abuse of [the victim's] mother and brother was relevant for purposes other than to show his bad character and criminal propensity."[33] However, the court concluded that evidence of those acts of physical abuse was probative and relative.[34]

Specifically, the Pennsylvania Supreme Court stated first that "the evidence [from the abuse involving the victim's mother and brother] was probative of the reasons for [the victim]'s significant delay in reporting the alleged sexual assaults—*i.e.,* the evidence tends to show that her experiences with appellant, including those assaults on family members, caused her to fear making a prompt report."[35] Second, the court stated that this evidence "was also relevant for *res gestae* purposes, *i.e.,* to explain the events surrounding the

---

[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*

13

sexual assaults, and resulting prosecution so that the case presented to the jury did not appear in a vacuum."[36]

Here, there was a delay in B.D.'s reporting of the sexual abuse. During a hearing, it was determined whether evidence from M.E.'s disclosure would be admissible to explain the delay in B.D.'s disclosure. As *Dillon* shows, this evidence is relevant for res gestae purposes such as explaining the events surrounding the sexual abuse and to explain why the reporting of the sexual abuse was delayed. As *Dillon* indicates, juries in sexual abuse cases expect to hear why the reporting of sexual abuse was delayed as well as the events surrounding the sexual assault. For these reasons and for the rationale in *Dillon* and other case law, this court respectfully requests that the Superior Court find this error raised on appeal meritless and find that the court did not abuse its discretion when deciding to admit this evidence to explain the delay in B.D.'s disclosure.

---

[36] *Id.*

### 3. *Whether the trial court erred when it allowed the Commonwealth to amend the timeframe in the information?*

The trial court did not err when it allowed the Commonwealth to amend the timeframe in the information, despite Appellant's argument to the contrary. The Commonwealth requested that that the information be amended such that the end date was February 2012 based on the victim's testimony and because the second count of rape, statutory assault would have happened outside the dates that are written on the current information.[37] Defense counsel mentioned that they had filed a Bill of Particulars, and the information read June 28, 2009 and June 28, 2010, which is what the defense was prepared to defend.[38] However, defense counsel admitted that he knew that one of the alleged incidences occurred outside of the time frame that was on the information and had notice.[39] This Court acknowledged that the alleged incidents remained the same despite the change.[40] The Commonwealth then pointed out that the crimes involving B.D., A.S., and M.E. involved the same house, same

---

[37] N.T., Jury Trial at 10.
[38] *Id.* at 10.
[39] *Id.* at 11.
[40] *Id.*

15

circumstances, a similar time frame, similar ages, and that Defendant was still around at the time the alleged incidents occurred.[41]

The Court concluded that "it is one event in '10 and one event in '12 theoretically. You haven't changed anything . . . All the facts stay the same, all the locations stay the same, the underlying criminal charges stay the same, right, but he was present and around."[42] Although the Commonwealth pointed out that it may work in Defendant's favor since they had to have dropped the second rape of a child charge since B.D. could have possibly been thirteen years-old during the second incident.[43]

This Court then carefully researched and examined case law and then permitted the Commonwealth to amend the information to February 2012.[44] This Court found no prejudice to the defense because:

> Appellant's denial . . . is not date dependent, does not create a problem because now he has an alibi that he can deny. He is certainly aware of what his conduct was within that time period because within that expanded time period he has already pled

---

[41] *Id.* at 11-12.
[42] *Id.* at 13.
[43] *Id.* at 14.
[44] *Id.* at 15-16.

16

guilty to similar conduct involving another one of this children or a child. So I see no prejudice to the Defense . . . .[45]

The trial court did not err when it allowed the Commonwealth to amend the timeframe in the information, despite Appellant's argument to the contrary. A court may allow the Commonwealth to amend the information "when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice."[46]

The purpose of the information is to give the defendant notice of the charges against him "so that he may have a fair opportunity to prepare a defense."[47] The Pennsylvania Superior Court has stated that relief is warranted in regard to an amendment "only when the variance between the original and the new charges prejudices an appellant by, for example, rendering defenses which might have been raised against the original charges ineffective with

---

[45] *Id.* at 16.
[46] Pa. R. Crim. P. 564.
[47] *Commonwealth v. Sinclair*, 897 A.2d 1218, 1223 (Pa. Super. Ct. 2006).

17

respect to the substituted charges."[48] The factors used to determine if an amendment prejudiced the defendant include the following:

> (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.[49]

In *Commonwealth v. Sinclair*, the Pennsylvania Superior Court found that the trial court did not err and that the defendant was not prejudiced when the trial court allowed amendment to the information because the facts in the information compared to the new information were identical, the facts in the "amended complaint were known to [the defendant] from the time charges were brought against him[, and] [t]here was no substantive changes to the elements of the crimes charge[d]."[50]

---

[48] *Id.* (Citing *Commonwealth v. Brown*, 556 Pa. 131, 135, 727 A.2d 541, 543 (1999)).
[49] *Id.* (Citing *Commonwealth v. Grekis*, 601 A.2d 1284, 1292 (Pa. Super. Ct. 1992)).
[50] *Id.* (Citing *Commonwealth v. Gray*, 478 A.2d 822, 825 (Pa. Super. Ct. 1984)).[50]

Similarly, in *Commonwealth v. Thomas*, the Court concluded that the Appellant did not suffer prejudice when the date on the information was amended. The Court reasoned that:

> The use of the incorrect date on the information by the Commonwealth was inadvertent. Through the information, the appellant was on notice of the charges filed against him, and because of the preliminary hearing, he was on notice of the factual basis for those charges. We refuse to allow him to take advantage of a clerical error for which he could not have suffered any prejudice.[51]

Similar to *Thomas* and *Sinclair*, here, the Commonwealth needed to amend the dates on the information to conform to the victim's testimony at a prior hearing. The factual scenario of each count did not change in any way. Appellant was on notice what the facts of these charges were prior to the amendment. There were no substantive changes, and the Appellant was on notice of the factual basis for the charges already. It did not render any defenses that Appellant would have ineffective. Therefore, this Court respectively requests that the Superior court find that the trial court did not err when it allowed the Commonwealth to amend the timeframe on the information.

---

[51] *Commonwealth v. Thomas*, 477 A.2d 501, 507 (Pa. Super. Ct. 1984).

**4. *Whether the Court erred when it found the Commonwealth had carried its burden of proving by clear and convincing evidence that [Appellant] meets the criteria to be designated as an SVP ("Sexually Violent Predator")?***

      *i.      Factual Background on hearing regarding whether Appellant was to be classified as a Sexually Violent Predator.*

A hearing was held on December 9, 2016 to determine whether Appellant should be classified as a Sexually Violent Predator ("SVP") based on CP-67-CR-86-2015 and CP-67-CR-85-2015. Dr. Robert Stein, who is a member of the Pennsylvania Sexual Offender Assessment Board provided a report where he determined whether the Appellant should have been classified as an SVP.[52] To make his determination, Dr. Stein used the court order for the assessment, defense counsel's response, police reports and other documents, which are described in his report.[53]

Dr. Stein discussed fifteen different factors which are taken into account and provided in his report.[54] The fifteen factors from Doctor Stein's report[55] and

---

[52] Transcript (Sentencing), Commonwealth v. D▉ at 2 (Dated December 9, 2016 and filed December 27, 2016).

[53] *Id.*; *see also* Robert M. Stein & Sexual Offenders Assessment Board, Sexual Offender Assessment 2 (2016).

[54] Transcript (Sentencing) at 2.

20

Dr. Stein's findings (which are paraphrased and quoted from his testimony) are as follows:

1. *"Whether the offense involved multiple victims."*[56] Here, there were multiple victims, and Dr. Stein concluded that multiple victims shows a greater risk of recidivism than if there was only one victim.[57]

2. *"Whether the individual exceeded the means necessary to achieve the offense."*[58] Here, Appellant had not exceeded the means necessary.[59]

3. *"The nature of the sexual contact with the victims."*[60] Dr. Stein stated that "this was relevant. The acts involved sexual intercourse with young children, and that is consistent with pedophilic disorder."[61]

4. *"The relationship of the individual to the victims."*[62] The victims in CP-67-CR-85-2015 and CP-67-CR-86-2015 were Appellant's biological daughter and niece.[63]

---

[55] These factors are quoted from his report and he had also testified about these factors. In this opinion, the factors are italicized for clarity.

[56] Robert M. Stein & Sexual Offenders Assessment Board, Sexual Offender Assessment 2 (2016).

[57] Transcript (Sentencing), Commonwealth v. D█████ at 3 (Dated December 9, 2016 and filed December 27, 2016).

[58] Stein at 4.

[59] Transcript (Sentencing) at 3.

[60] Stein at 4.

[61] Transcript (Sentencing) at 3.

[62] Stein at 4.

[63] Transcript (Sentencing) at 3. (The victim in 67-CR-85-2015 refers to A.S. and CP-67-CR-86-2015 refers to B.D.)

21

5. *"Age of the victims."[64]* The victim in one of the cases was six to seven years-old, and the other victim in the other case was eleven years-old; therefore, the doctor concluded that this is associated with pedophilic disorder.[65]

6. *"Whether the offense included a display of unusual cruelty by the individual during the commission of the crime."* [66] The doctor concluded that there was some level of cruelty since the sexual assault was penetrative and painful to A.S., and B.D. cried during the lengthy assault, although Dr. Stein did not know if it arose to the level of unusual cruelty.[67]

7. *"The mental capacity of the victim."[68]* The victims had a normal mental capacity.[69]

8. *"The individual's prior criminal record (sexual and nonsexual)."[70]* The acts in the prior sexual conviction occurred after the acts in 85-2016 and 86-2016, which would not be considered sexual offense recidivism.[71]

9. *"Whether the individual completed any prior sentences."[72]* He had not completed any prior sentences.[73]

---

[64] Stein at 4.

[65] Transcript (Sentencing) at 3.

[66] Stein at 4.

[67] Transcript (Sentencing) at 3.

[68] Stein at 4.

[69] Transcript (Sentencing) at 4.

[70] Stein at 4.

[71] Transcript (Sentencing) at 4.

[72] Stein at 4.

[73] Transcript (Sentencing) at 4.

10. *"Whether the individual participated in available programs for sexual offenders."*[74] Dr. Stein testified "I had no information on involvement in sex offender treatment. When I walked into court today, [Defense Counsel] did show me some evidence that [Appellant] was involved in sex offender treatment in the prison setting."[75]

11. *"Age of the individual."*[76] Appellant was 45 to 46 years-old at the time the acts occurred.[77]

12. *"Use of illegal drugs by the individual."*[78] Here, there was no history of illegal drugs.[79]

13. *"Any mental illness, mental disability, or mental abnormality."*[80] Appellant reported a history of post-traumatic stress disorder and depression.[81]

14. *"Behavioral characteristics that contribute to the individual's conduct."*[82]

15. *"Any additional behavioral characteristics"*[83] Dr. Stein stated that there was nothing else to report.[84]

---

[74] Stein at 4.

[75] Transcript (Sentencing) at 4.

[76] Stein at 5.

[77] Transcript (Sentencing) at 4.

[78] Stein at 5.

[79] Transcript (Sentencing) at 4.

[80] Stein at 5.

[81] Transcript (Sentencing) at 4.

[82] Stein at 5.

[83] Transcript (Sentencing) at 4.

[84] *Id.*

Dr. Stein also added that "[h]aving a sustained sexual interest in young children is associated with increased risk" according to statistical factors. These are all factors under Megan's Law.[85]

The Commonwealth asked Dr. Stein if he had concluded whether there was a minimum number of factors that were needed to conclude that a person was a Sexually violent predator, and Dr. Stein answered that "no, there's not. The factors are not weighted" and that just one factor could be a basis for concluding that a person is an SVP.[86]

Based on the factors, Dr. Stein determined that Appellant met the criteria to be a Sexually Violent Predator.[87] Dr. Stein specified the following:

> This offense involved the rape of two young girls over a period of greater than six months. There is sufficient evidence for pedophilic disorder. [Appellant] demonstrated sexual interest and behaviors in young children over a period of six months or more. There is also the matter of the prior sex conviction which involved a young teenager and non-consenting sexual acts that took place over several years. There was also evidence for other specified paraphilic disorder of non-consent. These two conditions, pedophilic disorder and a non-consent paraphilic disorder, provide

---

[85] *Id.* at 5.
[86] *Id.*
[87] *Id.*

sufficient evidence for a condition that is the impetus to sexual offending.[88]

In a previous case, Appellant had been found to not be an SVP.[89] When asked about what effect treatment in state prison had on the risk of recidivism, the doctor stated that "[t]he research generally shows that successful completion of sexual offender treatment shows a slight reduction in recidivism . . . And the parole board looks . . . at successful completion. They look at notes that the prison counselors might write about his participation."[90] This Court found that the Commonwealth had met its burden and that the Defendant met the sexually violent predator criteria and classified him as an SVP.[91]

> ii.     *Discussion regarding whether the court erred when it found Appellant to be a sexually violent predator.*

Prior case law has determined that this the type of issue raised by Appellant in his appeal concerns sufficiency of the evidence, and, therefore, the following standard is used:

> A challenge to the sufficiency of the evidence is a question of law requiring a plenary scope of review. The appropriate

---

[88] *Id.*at 5-6.

[89] *Id.*at 7.

[90] *Id.*at 8.

[91] *Id.* at 9.

standard of review regarding the sufficiency of the evidence is whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all the elements of the offenses. As a reviewing court, we may not weigh the evidence and substitute our judgment for that of the fact-finder. Furthermore, a fact-finder is free to believe all, part or none of the evidence presented.

At the hearing prior to sentencing the court shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator. Accordingly, in reviewing the sufficiency of the evidence regarding the determination of SVP status, we will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied.[92]

Under Pennsylvania law, when a court orders an assessment of whether a defendant meets the sexually violent predator criteria, "a member of the board as designated by the administrative officer of the board shall conduct an assessment of the individual to determine if the individual should be classified as a sexually violent predator."[93] According to that same law "An assessment shall include, but not be limited to, an examination of the following:

"(1) Facts of the current offense, including:

---

[92] *Commonwealth v. Brooks*, 7 A.3d 852, 860 (Pa. Super. Ct. 2010).
[93] 42 Pa.C.S. § 9799.24.

(i) Whether the offense involved multiple victims.
(ii) Whether the individual exceeded the means necessary to achieve the offense.
(iii) The nature of the sexual contact with the victim.
(iv) Relationship of the individual to the victim.
(v) Age of the victim.
(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.
(vii) The mental capacity of the victim.
(2) Prior offense history, including:
(i) The individual's prior criminal record.
(ii) Whether the individual completed any prior sentences.
(iii) Whether the individual participated in available programs for sexual offenders.
(3) Characteristics of the individual, including:
(i) Age.
(ii) Use of illegal drugs.
(iii) Any mental illness, mental disability or mental abnormality.
(iv) Behavioral characteristics that contribute to the individual's conduct.
(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense."[94]

Then, prior to sentencing, the Court is to determine if the Commonwealth has proven that a defendant is a sexually violent predator by clear and convincing evidence.[95]

---

[94] *Id.*
[95] *Id.*

A sexually violent predator is defined as follows: "[a]n individual determined to be a sexually violent predator under section 9795.4 . . . prior to the effective date of this subchapter or an individual convicted of an offense specified in" certain subsections of section 9799.14 and they are "determined to be a sexually violent predator under section 9799.24 . . . due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses."[96]

In *Commonwealth v. Brooks*, the appellant argued that the trial court erred when it classified him as an SVP because the majority of the statutory criteria were not met.[97] The Superior Court held that the trial court did not err. The Superior Court reasoned that "[i]n discussing the absence of certain statutory factors and discussing the facts of other cases, Appellant is essentially asking this Court to reweigh them. This we cannot do."[98] Similarly, in *Commonwealth v. Feucht*, the court held that "the Commonwealth does not have to show that any certain factor is present or absent in a particular case."[99]

---

[96] 42 Pa.C.S.A. § 9799.12.
[97] *Brooks*, 7 A.3d at 862.
[98] *Id.* at 863.
[99] *Commonwealth v. Feucht*, 955 A.2d 377, 381 (Pa. Super. Ct. 2008).

When viewed in the light most favorable to the Commonwealth as the verdict winner, here, there was sufficient evidence for the trial court to conclude that Appellant was a Sexually Violent Predator. This case is similar to the *Brooks* case, where some of the factors but not all of the factors favored finding the Appellant a Sexually Violent Predator. Specifically Appellant points out that the doctor did not know at the time of his assessment that Appellant wanted to seek treatment. This does not render the doctor's opinion as unreliable since the doctor discussed that having *completed* treatment would *slightly* reduce risk of recidivism.

Further, although Appellant notes that in a previous case the doctor had found the Appellant was not an SVP, there was no prior sexual conviction in the previous case either, unlike the case here. As the doctor and prior case law have demonstrated, there is no one factor that is required to conclude that a defendant is an SVP, and, as Dr. Stein had stated, one factor could possibly be determinative. Here, this Court had determined that Appellant was a sexually violent predator based on Dr. Stein's report and testimony. The Commonwealth had proven by clear and convincing evidence that Appellant was a Sexually Violent Predator. Therefore, this Court respectfully requests that the Superior

Court find that this Court did not err when it found the Commonwealth had carried its burden of proving by clear and convincing evidence that [Appellant] met the criteria to be designated as an SVP.

### 5. Whether the sentences for indecent assault and rape of a child should have merged for sentencing purposes?

Whether or not sentences should merge "is a question of law and, as such, [the] scope of review is plenary and [the] standard of review is *de novo*."[100]

Appellant is correct that rape of a child and indecent assault—person less than 13 years of age do merge for sentencing purposes when they arise out of the "a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense."[101]

However, Appellant has not addressed which count of Indecent Assault that he's alleging should have been merged in his Amendment Statement of Matters Complained of on Appeal. In the relevant section in the Amended Statement, the appellant states that "These convictions include one for rape of a

---

[100] *Commonwealth v. Williams,* 920 A.2d 887, 889 (Pa.Super.2007) (citation omitted)."
[101] *Commonwealth v. Lomax,* 2010 PA Super 210, 8 A.3d 1264, 1265 (2010); *Commonwealth v. Williams,* 920 A.2d at 889.

30

child and two for indecent assault under 18 Pa. C.S.A. 3126(a)(7). Because at least one indecent assault conviction is based on the same act of penetration as the rape of a child conviction, one indecent assault conviction merges for sentencing purposes." The subsection that the appellant identifies for this is section 3126(a)(7) which pertains to indecent assault --persons less than 13 years of age. Appellant, however, was convicted of only one count indecent assault----persons less than 13 years of age. Appellant was convicted of two counts of indecent assault --without consent, however. Either Appellant has incorrectly stated the number of counts or incorrectly stated the relevant subsection. Without proper identification of which indecent assault Count or subsection that Appellant is referring to, this court is unable to address this ground for appeal. This Court notes that upon review of the record, Appellant had not requested or motioned this court for reconsideration of sentence. However, this Court would gladly correct the sentence such that the proper count should have merged with rape of a child, per the Superior Court's decision and upon proper identification of which count the Appellant is referring to.

## CONCLUSION

Therefore, for all the reasons above, this Court respectfully requests that

the Superior Court find Appellant's arguments meritless.

BY THE COURT:

Dated: March 9, 2017

HARRY M. NESS, JUDGE

RECEIVED/FILED
YORK COUNTY
JUDICIAL CENTER
2017 MAR 13 AM 10: 05
DON O'SHELL
CLERK OF COURTS